RODENHISER v DUENAS

Docket No. 303192. Submitted April 12, 2012, at Grand Rapids. Decided
April 17, 2012, at 9:20 a.m. Leave to appeal denied, 493 Mich 856.
Connie G. Rodenhiser and Jeannie Rodenhiser, personal represen-
tatives of their sister Ellen S. Mullin's estate, filed an action in
the Kalamazoo Circuit Court, seeking to annul Mullin's mar-
riage to Rene Marco Duenas on the basis of fraud and Mullin's
having been legally incompetent to marry. Mullin had been
diagnosed with cancer in 2008 and was hospitalized because of
her condition by October 2009. She and Duenas were married at
the hospital the night of October 29, 2009, without the knowl-
edge of Mullin's family. Connie Rodenhiser arranged for Mullin
to execute a durable power of attorney on October 30, 2009,
appointing their mother as Mullin's patient advocate. Mullin's
family learned of Mullin and Duenas's marriage after her death
on November 8, 2009. The court, Curtis J. Bell, J., granted
Duenas's motion to dismiss under MCR 2.504(B)(2), concluding
that plaintiffs had failed to prove that Mullin was legally
incompetent to enter into a marriage. Plaintiffs appealed by
leave granted.

The Court of Appeals *held*:

1. There is a strong presumption regarding the validity of a
ceremonial marriage that can only be overcome with clear and
positive proof that the marriage was not valid. In general, under
MCL 552.3, only the parties to a marriage can commence an
annulment action. However, under MCL 552.35, a party's next
friend may bring an annulment action on the grounds that a party
to the marriage was not capable in law of contracting because of
mental incompetence. A party is legally competent to contract if he
or she possesses sufficient mind to understand in a reasonable
manner the nature and effect of the act in which he or she was
engaged. A contract may be avoided only if the person was of
unsound mind or insane when it was made and the unsoundness
or insanity was of such a character that the person had no
reasonable perception of the nature or terms of the contract.

2. The circuit court did not clearly err by granting Duenas's
motion to dismiss. Plaintiffs failed to present clear and definite

proof that Mullin was of unsound mind to the extent that she had no reasonable perception of the nature and effect of the marriage agreement she entered into with Duenas. Mullin and Duenas had been involved in a longstanding relationship at the time of their marriage and were living together at the time she entered the hospital in 2009. Mullin's medical records and her doctor's testimony established that during the relevant period Mullin was alert at times, able to comprehend her surroundings, was easily roused from sleep, and communicated appropriately with nurses. Connie Rodenhiser, who did not question Mullin's competence until after she learned of the marriage, had arranged for Mullin to execute a durable power of attorney the morning after the marriage ceremony, and the attorney who drafted the document attested that Mullin was of sound mind and not under any duress when she signed the document. Expert testimony that Mullin was prescribed drugs that had a high probability of creating mental changes that interfered with her thought process did not constitute clear and positive proof that she was of unsound mind.

3. An action to annul a marriage on the basis of fraud can only be brought by the defrauded spouse while both parties to the marriage are living, and the marriage cannot be annulled by the heirs of the spouse or other third parties, such as next friend. Plaintiffs' complaint was properly dismissed because plaintiffs were third parties and lacked legal standing to challenge Mullin's marriage to Duenas on the grounds of fraud.

Affirmed.

1. CONTRACTS — MARRIAGE CONTRACTS — ANNULMENT — INCOMPETENCE OF PARTY TO MARRIAGE.

There is a strong presumption regarding the validity of a ceremonial marriage that can only be overcome with clear and positive proof that the marriage was not valid; in general, only the parties to a marriage can commence an annulment action; however, a party's next friend may bring an annulment action on the grounds that a party to the marriage was not capable in law of contracting because of mental incompetence; a party is legally competent to contract if he or she possesses sufficient mind to understand in a reasonable manner the nature and effect of the act in which he or she was engaged; a contract may be avoided only if the person was of unsound mind or insane when it was made and the unsoundness or insanity was of such a character that the person had no reasonable perception of the nature or terms of the contract (MCL 552.3; MCL 552.35).

2. Contracts — Marriage Contracts — Annulment — Fraud.

> A marriage is void if consent was obtained by fraud; an action to annul a marriage on the basis of fraud can only be brought by the defrauded spouse while both parties to the marriage are living, and the marriage cannot be annulled by the heirs of the spouse or other third parties, such as next friends (MCL 552.2; MCL 552.3).

*Strain, Murphy & Vander Wal, PC*, (by *Stephen L. Elkins*), for Connie G. and Jeannie Rodenhiser.

*Miller Johnson* (by *W. Jack Keiser* and *Richard E. Hillary, II*) for Rene Duenas.

Before: Beckering, P.J., and Owens and Ronayne Krause, JJ.

Per Curiam. In this action for annulment, plaintiffs Connie G. Rodenhiser and Jeannie Rodenhiser, personal representatives of the estate of Ellen S. Mullin, appeal by leave granted an order entered by the Kalamazoo Circuit Court granting defendant Rene Marco Duenas' motion to dismiss plaintiffs' complaint. We affirm.

## I. FACTS

In April 2008, Ellen Mullin, age 50 at the time, was diagnosed with cancer of the tongue. She had part of her tongue removed that year; however, the cancer spread to her lymph nodes, and in April 2009 she underwent chemotherapy. Mullin's health deteriorated and she was admitted to Bronson Hospital on October 24, 2009, with stage-4 cancer. Plaintiffs are Mullin's sisters, Connie and Jeannie, who were appointed as personal representatives following Mullin's death.

On October 28, 2009, Connie, Mullin, and their mother met with a physician to discuss a possible transfer to hospice care. Connie spent that night and

much of October 29 at the hospital with Mullin. It was her observation that Mullin was "in and out of it a lot" and that she was "pretty sedated" and "having hallucinations." Connie finally left the hospital at about 9:00 p.m. Shortly thereafter, defendant came to spend the night; Connie did not know that defendant had planned a wedding for that night. At approximately 10:30 p.m., defendant and Mullin were married in a ceremony performed by Reverend Jeanne R. Kucks and witnessed by the nurse on duty that evening, Rebecca Bussey, R.N., and a man named Timothy N. Dickmon.

On October 30, 2009, Connie arranged to have an attorney appear at the hospital so that Mullin could execute a durable power of attorney appointing her mother as her patient advocate. The attorney, Paul Vlachos, signed a witness statement in which he attested that "the person who signed appears to be of sound mind and under no duress, fraud, or undue influence . . . ." Unfortunately, Mullin's overall condition never improved; she was transferred to hospice care, where she died on November 8, 2009. Following her death, Mullin's family learned of the marriage.

On November 20, 2009, plaintiffs filed a complaint for annulment. Plaintiffs presented their proofs at a two-day bench trial. At the close of their proofs, defendant made a motion to dismiss plaintiffs' action, which the trial court granted. The court found that plaintiffs had not carried their burden of proving that Mullin was legally incompetent to enter into a marriage contract at the time of the marriage ceremony.

## II. STANDARD OF REVIEW

An action to annul a marriage is equitable in nature. MCL 552.12. This Court reviews de novo matters of equity. *Schmude Oil Co v Omar Operating Co*, 184 Mich

App 574, 582; 458 NW2d 659 (1990). This Court reviews for clear error a trial court's decision on a motion for dismissal under MCR 2.504. *Warren v June's Mobile Home Village & Sales, Inc*, 66 Mich App 386, 389; 239 NW2d 380 (1976). "A finding is clearly erroneous where, although there is evidence to support the finding, the reviewing court . . . is left with the definite and firm conviction that a mistake has been made." *Ambs v Kalamazoo Co Rd Comm*, 255 Mich App 637, 652; 662 NW2d 424 (2003).

### III. COMPETENCE

Plaintiffs assert that the trial court clearly erred by granting defendant's motion to dismiss. They argue that the evidence submitted was sufficient to overcome the presumption of the validity of Mullin's marriage and that they presented sufficient evidence to prove that Mullin lacked the legal capacity to contract at law. We disagree.

In Michigan, there is a strong presumption regarding the validity of a ceremonial marriage. *In re Adams Estate*, 362 Mich 624, 627; 107 NW2d 764 (1961). Indeed, this presumption is one of the "strongest known to the law." *Id.* The presumption can only be overcome with "clear and positive proof" that the marriage was not valid. *Quinn v Quinn*, 4 Mich App 536, 538; 145 NW2d 252 (1966).

MCL 552.1 provides in relevant part:

> If solemnized within this state, a marriage that is prohibited by law because of consanguinity or affinity between the parties, because either party had a wife or husband living at the time of solemnization, *or because either party was not capable in law of contracting at the time of solemnization* is absolutely void. [Emphasis added.]

Generally, only the parties to a marriage can commence an action for annulment. MCL 552.3 provides:

> When a marriage is supposed to be void, or the validity thereof is doubted, for any of the causes mentioned in the 2 preceding sections; either party, excepting in the cases where a contrary provision is hereinafter made, may file a petition or bill in the circuit court of the county, where the parties or 1 of them, reside, or in the court of chancery for annulling the same and such petition or bill shall be filed and proceedings shall be had thereon as in the case of a petition or bill filed in said court for a divorce; and upon due proof of the nullity of the marriage, it shall be declared void by a decree or sentence of nullity.

However, a party's next friend may bring an action to annul a marriage on grounds that "a party to the marriage was not capable in law of contracting . . . ." MCL 552.35. A person is incapable in law of contracting when that person is mentally incompetent. *In re Erickson Estate*, 202 Mich App 329, 332; 508 NW2d 181 (1993). As noted by this Court in *Erickson Estate*,

> [t]he test of mental capacity to contract is whether the person in question *possesses sufficient mind to understand in a reasonable manner the nature and effect of the act in which the person is engaged.* To avoid a contract it must appear not only that the person was of unsound mind or insane when it was made, *but that the unsoundness or insanity was of such a character that the person had no reasonable perception of the nature or terms of the contract.* [*Id.* (emphasis added).]

We conclude that plaintiffs failed to show by "clear and definite proof" that Mullin was of unsound mind to the extent that she had no reasonable perception of the nature and effect of the marriage agreement she consummated with defendant. *Id.*; *Quinn*, 4 Mich App at 538.

First, this was not a situation in which Mullin met and married a man when she was gravely ill. Rather, Mullin knew defendant, had a longstanding romantic relationship with him, and cohabited with him before her terminal illness. Connie testified that Mullin met defendant in 1996 and that the two started dating in 2000. Defendant moved in with Mullin in 2001, then left and moved to Arizona following alleged infidelity. Mullin stayed in contact with defendant and later moved to Arizona to live with him in 2003. She stayed there for one school year before returning to Michigan. In 2007, defendant returned to Michigan, and he and Mullin purchased a house and lived together. At the time she was admitted to the hospital in 2009, Mullin was living with defendant.

Second, although evidence showed that Mullin was in poor health and suffered from confusion, fatigue, and multiple other ailments, according to Dr. Radhakrishna Vemuri, Mullin's treating oncologist, there were times when she was alert and able to comprehend her surroundings. Specifically, Vemuri testified that patients will drift in and out of alertness. He testified that Mullin was not "very sick" every time he saw her once her calcium levels improved. Specifically, one day before the marriage, Mullin was able to converse with Vemuri about a potential transfer to University of Michigan Hospital. In addition, Vemuri testified that he wrote the letter suggesting that Mullin needed decision-making assistance at Connie's request and that at the time he did not think that Mullin was totally incapacitated; instead, Vemuri testified that he thought that Mullin only needed "some support" in making decisions. He did not alert the appropriate hospital committee that Mullin was incompetent and did not testify that Mullin was incapable of deciding to be married on October 29.

Third, the medical records supported a finding that Mullin had been alert enough during the relevant time to comprehend her surroundings. The nursing notes for October 29 at 9:00 a.m. indicated that Mullin was "oriented to" "person, place, time" and that her affect, appearance, and behavior were "appropriate to the situation." At 8:30 p.m. that evening, the nurse on duty indicated that Mullin was awake and easily aroused from sleep, and the nurse made an entry for Mullin's "psychosocial assessment." The nurse indicated that Mullin's affect, appearance, and behavior were "appropriate to the situation," that Mullin "interacts" and "makes decisions," and that her mood was appropriate to the situation and further noted "real interp of event" and "understands proc[edure]." The nurse noted that Mullin was "alert, oriented x 3, approp vrbl resp, awake, denies numbness, denies tingling, denies vision ch, no agitation, no facial droop, no seizures . . . ." Later that evening, at 10:10 p.m., the nurse noted that Mullin was "awake in bed."

The following morning, October 30 at 9:00 a.m., the nurse on call made similar entries in the record. She indicated that Mullin's affect, appearance, and behavior were "appropriate to the situation." A physician's assistant also saw Mullin that morning and indicated that Mullin was "alert, oriented x 3, approp vrbl resp, awake, coordination nrm," but noted that Mullin's speech was "garbled." At 8:00 p.m. that evening, a nurse noted that Mullin was "alert, oriented x 3, approp vrbl resp, no agitation, no seizures . . . ." She also noted that Mullin's "affect, appearance, behavior" were "appropriate to the situation" and that Mullin "interacts with env" and "makes decisions" and also noted "mood approp [to] sit, real intrp event, understands proc." The nurse noted that Mullin's family was "complaining, controlling, demanding, hovering, uncooperative." Two hours later,

Mullin awakened "easily," and the nurse shampooed Mullin's hair and massaged her head. Mullin indicated, "That feels so good." The nurse noted: "Pt appears tired, family is demanding of pt for responses, answers. Encouraged family to allow pt to sleep. Will continue to monitor." The nurse also noted: "Pt requests lopressor, colace, senokot that she refused earlier after pressure from family members. Pt states that she wants the medication now when asked for confirmation." Later, at about midnight, the nurse noted that Mullin was easily aroused from sleep.

In sum, the relevant medical records show that at times Mullin was alert and able to comprehend her surroundings. Nurses indicated that Mullin was easily aroused from sleep, and Mullin communicated with nurses and made requests. The nursing staff questioned Mullin at times and accepted Mullin's request for medication over objections from her family.

Fourth, evidence that Connie had a lawyer come to the hospital to execute a durable power of attorney further supports a finding that Mullin was of sound mind and able to comprehend her surroundings at times while she was in the hospital. Specifically, Connie arranged for an attorney to appear on October 30. The attorney executed the durable power of attorney and attested that Mullin was of "sound mind" and not under any duress when she signed the document. Neither Connie nor any other member of Mullin's family questioned her capacity to execute the durable power of attorney at that time, and the issue of competency was only raised after the family learned of the marriage.

Fifth, the testimony of plaintiffs' numerous medical witnesses did not establish by clear and positive proof

that Mullin had no reasonable perception of the nature and effect of the marriage agreement.

Plaintiffs' expert witness, Dr. Wayne Grant, a clinical pharmacist, stated in his opinion letter that fentanyl could cause drowsiness, fatigue, confusion, impaired cognition, asthenia, dizziness, headache, nervousness, sleep disturbances, dysphoria, euphoria, lightheadedness, alterations of mood, tremor, abnormal gait and/or coordination (ataxia), amnesia, abnormal dreams, agitation, paresthesias, paranoia, and anxiety, and hallucinations. He also indicated that promethazine and hydrocodone can cause many of these same reactions. He concluded as follows: "It is of [sic] my clinical impression with a reasonable degree of medical certainty that Ms. Mullin's multiple drug therapies in conjunction with her multiple disease states did compromise her ability to discuss and execute complex decisions, such as entering into a the [sic] decision of marriage." However, at his deposition, Grant testified that "I'm not stating she had all these things occur." He indicated that confusion and sedation issues do arise in a majority of patients who receive the drugs Mullin was prescribed, but he stated that sometimes the patients can have periods of alertness.

Grant's testimony established that Mullin was prescribed drugs that had a high probability of creating "mental changes" that interfered with her thought process. This testimony did not amount to "clear and positive proof" that Mullin was of unsound mind to the extent that she had no reasonable perception of the nature and effect of the marriage. *Erickson Estate*, 202 Mich App at 332. The medications certainly could have had a negative effect on Mullin's mental capacity, but there was no proof that Mullin's capacity was so dimin-

ished that she lost all reasonable perception of the nature and effect of the marriage.

In sum, plaintiffs failed to show that Mullin was incompetent to contract at law given that Mullin knew defendant and had a longstanding relationship with him; Vemuri's testimony showed that there were times when Mullin was alert and able to comprehend her surroundings during her stay at Bronson; medical records supported that there were times when Mullin was alert and able to comprehend her surroundings; one day after the marriage, Connie arranged to have Mullin execute a durable power of attorney in which the attorney attested that Mullin was of sound mind; the testimony of plaintiffs' numerous medical witnesses did not establish that Mullin lacked all reasonable perception of the nature and effect of the marriage agreement on October 29, 2009; and Connie's credibility was undermined because she arranged for Mullin to execute a durable power of attorney the day after her marriage to defendant, and did not question Mullin's competency until after she learned of the marriage.

### IV. STANDING TO ASSERT FRAUD

Plaintiffs argue that they have standing to contest the validity of Mullin's marriage on the grounds of fraud or duress. We disagree.

Michigan law provides a few narrow grounds on which a marriage may be declared void. MCL 552.1 provides that a marriage is void for the following reasons:

> If solemnized within this state, a marriage that is prohibited by law because of consanguinity or affinity between the parties, because either party had a wife or husband living at the time of solemnization, or because

either party was not capable in law of contracting at the time of solemnization is absolutely void. The issue of such a marriage are legitimate.

MCL 552.2 provides that a marriage is void under several other circumstances, including fraud:

> In case of a marriage solemnized when either of the parties was under the age of legal consent, if they shall separate during such non-age, and not cohabit together afterwards, or in case the *consent of 1 of the parties was obtained by force or fraud*, and there shall have been no subsequent voluntary cohabitation of the parties, the marriage shall be deemed void, without any decree of divorce or other legal process. [Emphasis added.]

MCL 552.3 provides a procedure *for the parties to the marriage* to annul a marriage that is allegedly void on any of the grounds set forth in MCL 552.1 or MCL 552.2:

> When a marriage is supposed to be void, or the validity thereof is doubted, for any of the causes mentioned in the 2 preceding sections; *either party, excepting in the cases where a contrary provision is hereinafter made*, may file a petition or bill in the circuit court of the county, where the parties or 1 of them, reside, or in the court of chancery for annulling the same and such petition or bill shall be filed and proceedings shall be had thereon as in the case of a petition or bill filed in said court for a divorce; and upon due proof of the nullity of the marriage, it shall be declared void by a decree or sentence of nullity.

The only provision allowing a third party to file a petition or bill to annul a marriage is contained in MCL 552.35, which provides:

> If, at the time of a marriage, a party to the marriage *was not capable in law of contracting*, an individual admitted by the court as the party's next friend may bring an action to annul the marriage. [Emphasis added.]

"The right to annul a voidable marriage is a personal right and the action for annulment of such a marriage can be maintained only by a party to the marriage contract. Some statutes expressly require that a suit to annul a voidable marriage be brought and prosecuted by the party laboring under the disability claimed to render the marriage voidable. Therefore, a third person cannot, as a general rule, maintain an action to annul a marriage which is merely voidable." 4 Am Jur 2d, Annulment of Marriage, § 59, pp 584-585 (2007), citing *In re Davis Estate*, 55 Or App 982; 640 P 2d 692 (1982), *Dibble v Meyer*, 203 Or 541; 278 P2d 901 (1955), and *Tabak v Garay*, 237 AD2d 510; 655 NYS2d 92 (1997). Further, "[a]n action to annul a marriage on the ground of fraud can only be brought by the defrauded spouse while both parties to the marriage are living. It cannot be annulled at the suit of the heirs of the spouse imposed upon or other third persons." *Id.*, § 60, p 585 (2007), citing *Gibbons v Blair*, 376 NW2d 22 (ND, 1985); *Norris v Harrison*, 91 Us App DC 103; 198 F2d 953 (1952); *In re Succession of Ricks*, 893 So 2d 98 (La App, 2004).

We conclude that it is proper to apply to this case the general proposition that an action to annul a marriage on the ground of fraud can only be brought by the defrauded spouse while both parties to the marriage are living and the marriage cannot be annulled by the heirs of the spouse or other third persons, such as next friends. We make this conclusion based on our interpretation of the statutes cited earlier.

In construing a statute, this Court's primary goal is to give effect to the intent of the Legislature. *McCormick v Carrier*, 487 Mich 180, 191; 795 NW2d 517 (2010). In doing so,

[t]his Court begins by reviewing the language of the
statute, and, if the language is clear and unambiguous, it is
presumed that the Legislature intended the meaning ex-
pressed in the statute. Judicial construction of an unam-
biguous statute is neither required nor permitted. When
reviewing a statute, all non-technical words and phrases
shall be construed and understood according to the com-
mon and approved usage of the language, and, if a term is
not defined in the statute, a court may consult a dictionary
to aid it in this goal. A court should consider the plain
meaning of a statute's words and their placement and
purpose in the statutory scheme. [*Id.* at 191-192 (quotation
marks and citations omitted).]

In this case, the applicable statutes clearly and un-
ambiguously provide that third parties do not have
standing to bring suit to annul a marriage on the
ground that it was procured by fraud. Specifically, MCL
552.3 states that, unless otherwise provided, *"either
party"* may petition to annul a marriage on grounds
that it is void due to the reasons set forth in the two
preceding statutory sections (one of which includes
fraud). The phrase "either party" clearly refers to
parties to the allegedly void marriage.

First, the Legislature used the phrase "either party"
as opposed to "a party." The word "either "means "one
or the other of two." *Random House Webster's College
Dictionary* (2001). The only two people who can be
involved in a marriage are the man and woman who
agreed to it. See Const 1963, art 1, § 25. Given the
context of the statute at issue, the plain language used
can be interpreted in no other way except as providing
that suits for annulment on the ground that the mar-
riage was procured by fraud can only be commenced by
"either party" to the marriage at issue. See *McCormick*,
487 Mich at 191-192 (recognizing that a court should
consider the plain meaning of the words used).

Second, other sections of the statutes that apply to divorce and annulment, MCL 552.1, *et seq.*, refer to "parties" as "parties to the marriage." For example, MCL 552.1 refers to "a marriage that is prohibited by law because of consanguinity or affinity *between the parties* . . . ." (Emphasis added.) MCL 552.2 similarly refers to parties as "parties to the marriage" through use of the language "[i]n case of a marriage solemnized when *either of the parties* . . . ." (Emphasis added.) Finally, MCL 552.36 provides:

> *A party to a marriage* who, at the time of the marriage, was not capable in law of contracting and who later becomes capable in law of contracting may bring an action to annul the marriage. The court shall not, however, annul the marriage if the court finds that *the parties cohabited as husband and wife* after the party became capable in law of contracting. [Emphasis added.]

See *Robinson v City of Lansing*, 486 Mich 1, 17; 782 NW2d 171 (2010) ("[u]nless the Legislature indicates otherwise, when it repeatedly uses the same phrase in a statute, that phrase should be given the same meaning throughout the statute.").

Third, the Legislature provided that a third-party next friend can bring suit to annul a marriage in only one circumstance—when a party to the marriage is incapable of contracting at law. MCL 552.35. The Legislature's inclusion of only one ground on which a third party can bring suit to annul a marriage necessarily indicates that it did not intend that third parties could bring suit to annul a marriage on any and all of the grounds enumerated in the statute. See *Hoerstman Gen Contracting, Inc v Hahn*, 474 Mich 66, 74-75; 711 NW2d 340 (2006) (explaining the legal maxim of statutory construction "*expressio unius est exclusio alterius*"—"[t]he expression of one thing is the exclusion of another").

In sum, under MCL 552.35, a party's next friend can bring an action to annul a marriage on the ground that the party lacked legal capacity to contract. However, pursuant to MCL 552.3, a complaint for annulment based on fraud can only be brought by one of the parties to the marriage. Therefore, plaintiffs, as third parties, lacked legal standing to challenge Mullin's marriage to defendant on the ground of fraud and this aspect of their complaint was properly dismissed on that basis.

Affirmed.

BECKERING, P.J., and OWENS and RONAYNE KRAUSE JJ., concurred.