# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

*In re* ASF, Minor.

FOR PUBLICATION
July 14, 2015
9:20 a.m.

No. 324821
Wayne Circuit Court
Family Division
LC No. 14-000396-AO

Before: HOEKSTRA, P.J., and JANSEN and METER, JJ.

PER CURIAM.

Petitioners Samuel Spann and Janet Spann ("petitioners"), the grandparents of the minor child, ASF, sought to adopt ASF after the parental rights of ASF's biological parents had been terminated. The superintendent of the Michigan Children's Institute's (MCI) withheld consent to adopt. Petitioners challenged the superintendent's decision in circuit court. After conducting a hearing pursuant to MCL 710.45(2) ("§ 45 hearing"), the circuit court found that the superintendent's decision was not arbitrary or capricious and, accordingly, the circuit court upheld that decision. The lawyer-guardian ad litem (LGAL) for the minor child appeals the circuit court's decision, and petitioners have filed a cross-appeal also challenging the circuit court's decision. Because the trial court did not clearly err by concluding that petitioners failed to present clear and convincing evidence demonstrating that the superintendant's decision was arbitrary and capricious, we affirm.

In January 2011, ASF and her biological sister, SF,[1] were removed from their mother's care for a variety of reasons and they were placed with petitioners, who became licensed foster parents. Petitioner Samuel is ASF's maternal grandfather and petitioner Janet is his wife, but she is not a blood relative to ASF or SF. ASF was nine months old at the time of her placement with petitioners and SF was 11 years old. Although reunification services were provided, ASF's biological parents made no progress in their treatment plans, and their parental rights were terminated in April 2013.

---

[1] Petitioners pursued a guardianship of SF, and that guardianship is not at issue in this appeal. Another of ASF's siblings had been adopted by ASF's aunt at birth and resides in Arizona.

By all accounts, petitioners took excellent care of SF and ASF for a number of years and, once termination of parental rights occurred, the adoption agency began to plan for ASF's adoption by petitioners. In July 2013, however, petitioner Samuel contacted the adoption worker and offered his son Damon and daughter-in-law Julie as alternate potential adoptive parents, citing his age and uncertainty about his own ability to provide long-term care for ASF. Damon, who was in his mid-40s, and his wife Julie had a young son who was six months older than ASF.

At a family team meeting held a short time later, petitioner Samuel reversed his position and indicated that he now wanted to proceed with the adoption of ASF. But, in light of the offer of Damon and Julie as adoptive parents for ASF and their expression of interest, the agency treated the case as a competing-party adoption. Unfortunately, as a result of this conflict, the relationship between petitioners and Damon and Julie became strained.

After conducting an adoption assessment and addendum, the adoption worker, Samantha Slack, recommended that petitioners' request for consent to adopt be denied. A case conference was held, but the adoption agency, Bethany Christian Services (BCS), again did not recommend that petitioners receive consent to adopt. BCS recommended that consent to adopt be given to Damon and Julie. The BCS recommendation was sent to the MCI superintendent (the "superintendent"), who denied petitioners' request for consent to adopt ASF.[2] When considering the request for consent, among many factors, the superintendent weighed: petitioners' ages, particularly the significant age difference with ASF, petitioners' minor health issues, petitioner Samuel's vacillation regarding the adoption and his recommendation of Damon and Julie as adoptive parents, ASF's sibling relationship with SF, the potential for a companion relationship between ASF and Damon's son, the psychological ties between ASF and petitioners, and the potential for petitioners to continue their relationship with ASF by assuming a grandparent role.

After the superintendent denied consent to the adoption, under MCL 710.45, petitioners then filed a motion in circuit court challenging the superintendent's decision. The circuit court conducted a § 45 hearing at which petitioners testified and called the MCI superintendent to testify. The LGAL was permitted to participate in the proceeding by cross-examining witnesses and participating in arguments. After petitioners rested their case, the LGAL was also able to call Slack, the adoption worker. MCI then moved for involuntary dismissal pursuant to MCR 2.504, and the circuit court granted the motion over the LGAL's objection. The court concluded that petitioners failed to demonstrate by clear and convincing evidence that the MCI superintendent's decision to withhold consent to adopt was arbitrary and capricious. From this decision, the LGAL and petitioners now appeal.[3]

---

[2] The superintendent represents "the state as guardian of each child committed" to the MCI following termination of parental rights, and the superintendant has the power to make decisions on behalf of a child committed to the MCI. See MCL 400.203(1), (2). The superintendent's specific authority to consent to the adoption of a child is set forth in MCL 400.209.

[3] On appeal, the MCI challenges this Court's jurisdiction in the present case. As a general matter, this Court has subject matter jurisdiction over appeals from a trial court's decision on a motion under MCL 710.45. See MCL 710.45(10). The MCI claims, however, that the LGAL is

-2-

On appeal, the LGAL and petitioners argue that the trial court clearly erred by granting MCI's motion for involuntary dismissal pursuant to MCR 2.504(B)(2). Petitioners contend first of all that the trial court's decision must be reversed because the trial court failed to make specific findings of fact and conclusions of law as required by MCR 2.517(A)(1). Further, petitioners also argue that the superintendent's decision to deny consent was arbitrary and capricious because there were no "good reasons" to withhold consent, the superintendent failed to consider ASF's individual circumstances, and the denial amounted to discrimination against petitioners based solely on their age. In addition, the LGAL similarly asserts that the superintendent's decision was arbitrary and capricious because he failed to consider, or to adequately consider, ASF's unique circumstances including, for example, her attachment to petitioners and SF as well as the tension between petitioners and Damon. The LGAL also maintains that the trial court's grant of the MCI's motion for involuntary dismissal was premature because the LGAL had not had a complete opportunity to present her own evidence regarding the purportedly arbitrary and capricious nature of the superintendent's decision. According to the LGAL, by denying the LGAL a full opportunity to participate in the proceedings, the trial court also denied ASF due process and the equal protection of the law.

This Court reviews questions of law, including the interpretation and application of court rules and statutes, de novo. *Nat'l Waterworks, Inc v Intl Fid & Sur, Ltd*, 275 Mich App 256, 258; 739 NW2d 121 (2007). A trial court's factual findings underlying a decision to dismiss an action pursuant to MCR 2.504 are reviewed for clear error. *Rodenhiser v Duenas*, 296 Mich App 268, 272; 818 NW2d 465 (2012). A trial court's finding is clearly erroneous where, although there may be evidence to support the finding, the reviewing court is left with a definite and firm conviction that a mistake occurred. *Id.* Whether a trial court applied the correct standard to its

---

not an appropriate party to bring an appeal under MCL 710.45(10) and, that, because the LGAL lacks statutory standing, this Court lacks jurisdiction. See *In re Beatrice Rottenberg Living Trust*, 300 Mich App 339, 355; 833 NW2d 384 (2013). Contrary to the assertion that this Court lacks jurisdiction, we note that, although the appeal was initiated by LGAL, petitioners timely filed a cross-appeal, MCR 7.207(A)(2), (B)(2), and a cross-appeal may be prosecuted to its conclusion even if this Court dismisses the initial appeal, MCR 7.207(D). Thus, even supposing the LGAL lacks standing to initiate the present appeal, at a minimum, petitioners' appeal is properly before this Court. See MCL 710.45(10). Moreover, although the LGAL of an adoptee under the age of 14 is not considered an "interested party" in adoption proceedings, MCL 710.24a(1), ASF was appointed a LGAL during child abuse and neglect proceedings, see MCL 712A.17c(7), and a LGAL appointed in this manner continues to represent the child's best interests provided that, as in this case, the child remains subject to the supervision of the MCI, see MCL 712A.17c(9). During this time, the LGAL must advocate for the child's best interests, and the LGAL is "entitled to full and active participation in all aspects of the litigation." MCL 712A.17d(1)(b). There is no indication that the LGAL in this case has been discharged and, consequently, in connection with petitioners' appeal, we see nothing improper in the LGAL's continued participation insofar as she serves as a representative for the child's best interests, and we will therefore consider the LGAL's arguments. See generally MCL 710.45(5); MCL 712A.17c(9); MCL 712A.17d.

review of the superintendent's denial of consent to adopt poses a question of law which we review for clear legal error. *In re Keast*, 278 Mich App 415, 423; 750 NW2d 643 (2008).

Under MCR 2.504(B)(2), involuntary dismissal of a hearing tried without a jury is appropriate when, after the presentation of the plaintiff's evidence, the court determines, based on the facts and the law, that the plaintiff has no right to relief.[4] *Samuel D Begola Servs, Inc v Wild Bros*, 210 Mich App 636, 639; 534 NW2d 217 (1995). In full, this provision states:

> In an action, claim, or hearing tried without a jury, after the presentation of the plaintiff's evidence, the court, on its own initiative, may dismiss, or the defendant, without waiving the defendant's right to offer evidence if the motion is not granted, may move for dismissal on the ground that, on the facts and the law, the plaintiff has no right to relief. The court may then determine the facts and render judgment against the plaintiff, or may decline to render judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in MCR 2.517. [MCR 2.504(B)(2).]

Pursuant to this rule, "a motion for involuntary dismissal calls upon the trial judge to exercise his function as trier of fact, weigh the evidence, pass upon the credibility of witnesses and select between conflicting inferences." *Marderosian v Stroh Brewery Co*, 123 Mich App 719, 724; 333 NW2d 341 (1983). The plaintiff is not entitled to the most favorable interpretation of the evidence. *Id.*

In the instant action, petitioners sought relief pursuant to MCL 710.45, which allows a petitioner to challenge the superintendent's withholding of consent to an adoption. Accordingly, MCI's motion for involuntary dismissal under MCR 2.504(B)(2) was properly granted if, during their presentation of evidence, petitioners failed to demonstrate their entitlement to relief under MCL 710.45. In relevant part, MCL 710.45 provides:

> (1) A court shall not allow the filing of a petition to adopt a child if the consent of a representative or court is required by section 43(1)(b), (c), or (d) of this chapter unless the petition is accompanied by the required consent or a motion as provided in subsection (2).

> (2) If an adoption petitioner has been unable to obtain the consent required by section 43(1)(b), (c), or (d) of this chapter, the petitioner may file a motion with the court alleging that the decision to withhold consent was arbitrary and capricious. A motion under this subsection shall contain information regarding both of the following:

---

[4] The general Michigan Court Rules apply to adoption proceedings, except as modified by MCR 3.801-3.807. MCR 3.800(A). MCR 3.800 *et seq.* does not contain a specific provision regarding involuntary dismissal.

(a) The specific steps taken by the petitioner to obtain the consent required and the results, if any.

(b) The specific reasons why the petitioner believes the decision to withhold consent was arbitrary and capricious.

* * *

(7) Unless the petitioner establishes by clear and convincing evidence that the decision to withhold consent was arbitrary and capricious, the court shall deny the motion described in subjection (2) and dismiss the petition to adopt.

(8) If the court finds by clear and convincing evidence that the decision to withhold consent was arbitrary and capricious, the court shall issue a written decision and may terminate the rights of the appropriate court, child placing agency, or department and may enter further orders in accordance with this chapter or section 18 of chapter XIIA as the court considers appropriate. In addition, the court may grant to the petitioner reimbursement for petitioner's costs of preparing, filing, and arguing the motion alleging the withholding of consent was arbitrary and capricious, including a reasonable allowance for attorney fees. [Footnotes omitted.]

As these provisions make plain, to obtain relief under MCL 710.45 at a § 45 hearing, petitioners bore the burden of establishing, by clear and convincing evidence, that the superintendent's denial of consent was arbitrary and capricious. MCL 710.45(7). In other words, the family court is not permitted to decide the issue of adoption de novo; rather, "a family court's review of the superintendent's decision to withhold consent to adopt a state ward is limited to determining whether the adoption petitioner has established clear and convincing evidence that the MCI superintendent's withholding of consent was arbitrary and capricious." *In re Keast*, 278 Mich App at 423-424. The clear and convincing evidence standard is the most demanding standard applied in civil cases. *In re Martin*, 450 Mich 204, 226; 538 NW2d 399 (1995). Under this standard, evidence is clear and convincing when it:

produce[s] in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable [the factfinder] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue. [*Id.* at 227 (quotation marks and citation omitted) (alterations added by *In re Martin*).]

Whether action is arbitrary or capricious is evaluated as follows:

The generally accepted meaning of "arbitrary" is "determined by whim or caprice," or "arrived at through an exercise of will or caprice, without consideration or adjustment with reference to principles, circumstances, or significance, ... decisive but unreasoned." The generally accepted meaning of "capricious" is "apt to change suddenly; freakish; whimsical; humorsome." [*In re Keast*, 278 Mich App at 424-425 (internal quotation marks and citations omitted).]

To decide whether a denial of consent to adopt was arbitrary and capricious, the initial focus at the § 45 hearing is on the reasons given for withholding consent to the adoption. *Id.* at 425. "It is the absence of any good reason to withhold consent, rather than the presence of good reasons to grant it, that indicates that the decision maker has acted arbitrarily and capriciously." *Id.*

> Thus, the focus is not whether the representative made the "correct" decision or whether the probate judge would have decided the issue differently than the representative, but whether the representative acted arbitrarily and capriciously in making the decision. Accordingly, the hearing under § 45 is not . . . an opportunity for a petitioner to make a case relative to why the consent should have been granted, but rather is an opportunity to show that the representative acted arbitrarily and capriciously in withholding that consent. It is only after the petitioner has sustained the burden of showing by clear and convincing evidence that the representative acted arbitrarily and capriciously that the proceedings may then proceed to convincing the probate court that it should go ahead and enter a final order of adoption. [*In re Cotton*, 208 Mich App 180, 184; 526 NW2d 601 (1994).]

In the present case, among the superintendent's reasons for denial of consent were the following: (1) the identification of Damon and Julie as "suitable" relatives who were "very appropriate" and willing to adopt ASF, (2) the age of petitioner Samuel (age 71) and Janet (age 65) compared to ASF (age 4), particularly when Samuel had expressed doubts about petitioners' ability to parent ASF into the future, he had identified Damon and Julie as a better option, and there remained the possibility that petitioners could assume a grandparent role for ASF if she were adopted by Damon and Julie, (3) petitioners' heath concerns, including diabetes and hypertension, as well as SF's health concerns which required "close monitoring," and (4) petitioner Samuel's lack of steady commitment to parenting ASF for the next 14 years as evinced by his vacillation on the adoption and his identification of Damon and Julie as a better alternative.

When reviewing the reasons given by the superintendent, the trial court determined that there was not clear and convincing evidence that these reasons were arbitrary and capricious, and for this reason the trial court granted the MIC's motion for involuntary dismissal. The trial court explained:

> The initial focus is whether the MCI superintendent acted arbitrarily and capriciously. I'm not supposed to focus on what reasons existed to authorize adoptions. I'm deeply impressed that Janet and Sam Spann are wonderful people. They did a wonderful job with the child. But what I have to decide is whether there's the absence of any good reason to withhold consent.

> * * *

> Well, motion [for involuntary dismissal] granted. [The superintendent] had reasons for doing what he did. I've held four or five now Section 45 hearings, and there are times when I wish he would have considered factors that

he didn't and factors that he considered that I didn't think were that important but he did think they were that  important.  I believe that [the superintendent] acted within the law.  He did have a focus on the ages of the parents [sic].  I don't believe it's unconstitutional for him to have considered it but he did.

He was very worried that the abilities of Sam and Janet Spann would not be up to the needs of the child in ten years.  He worries about the commitment that Mr. Spann had.  And he did have the feeling that the relationship between Sam and Janet Spann would continue in some form.  I cannot say there's the absence of any good reason to withhold consent.  Motion granted.

In reviewing the trial court's assessment of the superintendent's decision, initially we note that, contrary to petitioners' arguments on appeal, the trial court made findings of fact and conclusions of law as required by MCR 2.517.  The trial court plainly applied the correct legal standard for review of the superintendent's decision, recognizing that the focus was on the reasons for denial and whether those reasons were arbitrary and capricious.  See *In re Keast*, 278 Mich App at 425.  Further, as a factual matter, the trial court clearly identified the superintendent's main reasons for denial, mainly petitioner Samuel's vacillation on the adoption, petitioners' possible difficulty parenting ASF into the future, and the availability of adoption by another relative which would allow ASF to continue a relationship with petitioners as her grandparents.  While the trial court's explanation was relatively concise, the trial court was plainly aware of the issues involved and "brief, definite, and pertinent findings and conclusions" regarding these issues were sufficient "without "overelaboration of detail or particularization of fact."  MCR 2.517(A)(2).  See also *Triple E Produce Corp v Mastronardi Produce, Ltd*, 209 Mich App 165, 176; 530 NW2d 772 (1995).  In short, the trial court applied the correct legal standard and its findings were sufficient to satisfy MCR 2.517.

On appeal, petitioners posit that the circuit court did not comply with MCR 2.517 because the trial court referred to reasons offered by the superintendent that petitioners believe were contrary to the evidence.  For example, petitioners maintain that, contrary to the superintendent's determinations, their relationship with ASF may not continue because their relationship with Damon and Julie is strained, that there is no evidence their age or health affects their ability to parent ASF, and that there is no evidence petitioner Samuel lacked commitment to the adoption of ASF.  While petitioners frame these arguments in reference to the trial court's compliance with MCR 2.517, these arguments actually concern the factual and legal merit of the superintendent's decision, not the adequacy of the trial court's factual findings.  That is, the fact that petitioners disagree with the trial court's findings regarding the conflicting evidence does not render the trial court's findings inadequate under MCR 2.517.

In any event, it is clear that the superintendent's opinions and the findings of the trial court were supported by the evidence.  For example, evidence was presented that BCS and Slack were aware that petitioner Samuel and Damon had an amicable relationship until Damon and Julie were viewed as a prospective adoptive family in lieu of petitioners, at which time the relationship became strained.  Given their past amicable relationship, it was not erroneous to conclude that the parties could set aside their differences for ASF's best interests.  Further, there was evidence that petitioner Samuel expressed doubts regarding petitioners' ability to care for ASF long term and that he offered Damon and Julie as an alternative, thereby providing a basis

for the conclusion that he lacked commitment to the adoption. As further support for this finding, during interviews, both Damon and Samuel's daughter Deanna reported that Samuel did not want to proceed with the adoption. Finally, neither the superintendent nor the trial court concluded that petitioners' ages and health prevented them from caring for ASF. Rather, their age and heath were considered as pertinent factors for long-term planning, particularly given the fact that petitioner Samuel had previously questioned petitioners' ability to permanently plan for ASF in light of his age. Though there may have been some conflicting evidence on these points, these conflicts were resolved by the superintendent and the trial court, and the trial court's findings were thus supported by the evidence presented.

Recognizing that there was underlying factual support for the superintendent's determinations, contrary to arguments by petitioners and LGAL, we also conclude that the trial court did not clearly err when, at the close of petitioners' case, it determined, based on the facts and laws, that petitioners were not entitled to relief because they had not shown, by clear and convincing evidence, that the superintendent's denial of consent was arbitrary and capricious. See MCL 710.45(7); MCR 2.504(B)(2). In particular, on appeal, petitioners and the LGAL both argue that the superintendent's decision was arbitrary and capricious. They further contend that the decision was discriminatory and a violation of law to the extent that consent to adopt was withheld because of petitioners' ages. We disagree.

Preliminarily, petitioners contend that the superintendent's consideration of their ages violated MCL 722.957(1) and the Michigan Civil Rights Act (CRA), MCL 37.2101 *et seq*. The foster care and adoption services act, MCL 722.951 *et seq*., addresses adoption facilitators and refusal to provide services. MCL 722.957(1) states, in relevant part:

> Except as provided in subsection (2), an adoption facilitator shall not refuse to provide services to a potential adoptive parent based *solely on age*, race, religious affiliation, disability, or income level. A child placing agency shall not make placement decisions *based solely on age*, race, religious affiliation, disability, or income level. [Emphasis added.]

The CRA prohibits a person from denying an individual "the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation or public service because of religion, race, color, national origin, *age*, sex, or marital status." MCL 37.2302(a) (emphasis added).

In this case, the record clearly establishes that the MCI superintendent did not violate MCL 772.957(1) because he did not withhold consent to adopt *solely* because of petitioners' ages. The superintendent testified that petitioners' ages was only one factor that he considered. He identified many other factors involved in his decision to withhold consent, including petitioners' health, petitioner Samuel's vacillation regarding the adoption and his recommendation of Damon and Julie as adoptive parents, and petitioners' ability to maintain a grandparent role in ASF's life. Thus, there was no violation of MCL 722.957(1). Further, the superintendent's consideration of petitioners' ages did not violate the CRA. The purpose of the Adoption Code is to provide the *adoptee* with adoption services, to safeguard the adoptee's best interests, and to achieve permanency for the adoptee. MCL 710.21a. It is the best interests of the adoptee which are the overriding concern, and "[i]f conflicts arise between the rights of the

adoptee and the rights of another, the rights of the adoptee shall be paramount." MCL 710.21a(b). In this context, the superintendent did not deny petitioners the full and equal enjoyment of a public service because of their age. See MCL 37.2302(a). Rather, consent for adoption was denied because the superintendent found that adoption by petitioners was not in ASF's best interests in light of a number of factors, including petitioners' ability and willingness to provide long-term care to a four-year-old child. Indeed, it was petitioners who first injected the issue of their ages as a factor to consider. In short, in assessing ASF's best interests, it was not improper, or discriminatory, for the superintendent to consider petitioners' ages relative to their ability to provide for ASF's long-term care.

Given the evidence presented, the circuit court also did not clearly err by concluding that petitioners did not present clear and convincing evidence to establish that the superintendent's decision was arbitrary and capricious. In a close case such as this one, it is important that we remain mindful of the standard governing our review and that of the circuit court. That is, we are not insensitive to the facts that the petitioners undisputedly took excellent care of ASF for 3½ years beginning when she was only nine months old and that ASF is closely bonded to petitioners as well as her sister SF. Given ASF's close bond to petitioners, and to her sister who remains in petitioners' care, reasonable minds might well question the wisdom of denying petitioners consent to adopt and removing ASF from the continuity of a stable family setting. See MCL 710.22(g). But, neither we nor the circuit court review the matter de novo, and it is not for us to say whether the superintendent made the "correct" decision. *In re Keast*, 278 Mich App at 423-424; *In re Cotton*, 208 Mich App at 184. Instead, considering the reasons given for withholding consent, we look at whether the trial court clearly erred by finding that petitioners failed to present clear and convincing evidence that the superintendent acted arbitrarily and capriciously. *In re Keast*, 278 Mich App at 423-425. "[I]f there exist good reasons why consent should be granted and good reasons why consent should be withheld, it cannot be said that the representative acted arbitrarily and capriciously in withholding that consent even though another individual . . . might have decided the matter in favor of the petitioner." *In re Cotton*, 208 Mich App at 185. Such is clearly the case here. There may be good reasons why petitioners should have been permitted to adopt ASF. But, our focus must be on the reasons given for denial, and considering those reasons—Samuel's apparent vacillation in his commitment to adoption, petitioners' ages and health in relation to their ability to parent ASF in the long term, as well as the suitability of adoption by Damon and Julie which will allow for a continued relationship between ASF and petitioners—we cannot find clear error in the trial court's conclusion that petitioners failed to present clear and convincing evidence that the superintendent acted arbitrarily and capriciously.

Moreover, contrary to petitioners' arguments, the superintendent and the trial court considered ASF as well as her individual circumstances, and the reasons for denying consent were not invalid due to these circumstances. See *In re CW*, 488 Mich 935; 790 NW2d 383 (2010). Most relevant to the arguments by petitioners and the LGAL, the superintendent acknowledged that petitioners had taken excellent care of ASF for 3½ years, since she was nine months old. He also recognized that there was a bond between petitioners, SF, and ASF. Neither the superintendent nor the trial court ignored these important facts; rather, in light of other considerations, as detailed above, the superintendent nonetheless determined that consent to adopt should be denied. While petitioners "may be able to marshal evidence" in opposition to these conclusions, they have not shown by clear and convincing evidence that the

-9-

superintendent's determinations were frivolous, fanciful, or without factual support. Cf. *In re Cotton*, 208 Mich App at 186. Under these circumstances, petitioners and the LGAL have not shown that the superintendent acted arbitrarily and capriciously by withholding consent.

When challenging the trial court's grant of the MIC's motion for involuntary dismissal under MCR 2.504(B)(2), the LGAL in particular maintains that the motion was prematurely granted because she was not allowed to present her own case in its entirety before the trial court determined that petitioners were not entitled to relief. Contrary to the LGAL's arguments, a motion under MCR 2.504(B)(2) is properly granted "after the presentation of the *plaintiff's* evidence," and the "plaintiff" is the party who commences the action, MCR 2.201(A). A § 45 hearing in particular is commenced by a "petitioner" who is unable to obtain consent to adopt. MCL 710.45(2). By statute, a "petitioner" is defined as an individual who files an adoption petition with the court. MCL 710.22(r). The petitioner initiates the § 45 proceedings seeking relief by filing a motion alleging that the withholding of consent was arbitrary and capricious, and it is the petitioner who bears the burden of proof during the hearing. MCL 710.45(2), (7). In contrast, the LGAL was not a "petitioner" and, as such, she did not commence the request for a § 45 hearing. Further, neither ASF nor the LGAL was an "interested party" to the adoption proceedings, MCL 710.24a(1), meaning that the LGAL could not, and did not, intervene as a party to the proceedings to challenge the withholding of consent. See *Matter of Toth*, 227 Mich App 548, 555; 577 NW2d 111 (1998); MCL 710.21a(e). Instead, petitioners Samuel and Janet requested the hearing, petitioners were the parties seeking relief, and it was petitioners who bore the burden of proof during the hearing. Consequently, at the close of petitioners' proofs, it was appropriate for the trial court to consider whether petitioners were entitled to relief given the facts and the law without providing the LGAL the opportunity to present a case separate from petitioners.[5] MCR 2.504(B)(2).

Moreover, we note that, in this case, the LGAL specifically complains that, most notably, she was not allowed to present additional evidence regarding ASF's attachment to petitioners and SF, including an expert on attachment. However, although the LGAL objected to the MCI's motion for involuntary dismissal, the LGAL failed to make an offer of proof in the trial court regarding this evidence. See MRE 103(a)(2); *Detroit v Detroit Plaza Ltd Partnership*, 273 Mich App 260, 291-292; 730 NW2d 523 (2006). Further, based on the minimal information we have

---

[5] We do not suggest that a LGAL is entirely prohibited from participating in a § 45 hearing. There is support for the proposition that, when a LGAL has been appointed during child abuse and neglect proceedings, some participation by a LGAL is envisioned during ensuing adoption proceedings that occur during the LGAL's continued representation of the child. See MCL 710.45(5); MCL 712A.17c(9); MCL 712A.17d. See also *In re Row*, unpublished opinion of the Court of Appeals, issued June 24, 2014 (Docket No. 319389); *In re AEG*, unpublished opinion of the Court of Appeals, issued November 7, 2013 (Docket No. 316599). This participation does not, however, rise to the level of making a LGAL for an adoptee under age 14 an "interested party" or a "petitioner." See MCL 710.22(r); MCL 710.24a(1). Because the LGAL was not a petitioner or even an "interested party," the trial court could grant a motion for involuntary dismissal under MCR 2.504(B)(2) before the LGAL completed her presentation of evidence.

regarding the LGAL's proffered expert witness, additional evidence regarding ASF's attachment to petitioners and SF would not have altered the outcome because the superintendent testified that he was aware of ASF's attachment to petitioners and SF, and he acknowledged that because of that attachment, a change in placement would have to be very careful and monitored. Thus, the superintendent and trial court were plainly aware of ASF's circumstances, see *In re CW*, 488 Mich at 935, and the superintendent in fact recognized that ASF's attachment with petitioners favored granting consent to adopt, but he found that other factors provided good reasons to withhold consent. Given the good reasons for denying consent despite ASF's attachment to petitioners, it was not sufficient for the LGAL to show that ASF's attachment to petitioners provided a good reason to grant consent and thus, even assuming her evidence would have established good reasons to grant petitioners consent, such a showing does not establish that the superintendent acted arbitrarily or capriciously by withholding consent for other reasons. See *In re Cotton*, 208 Mich App at 183-185. Consequently, even if the LGAL should have been permitted to present additional evidence, the LGAL has not shown ASF was prejudiced by this denial and substantial justice does not require reversal of the trial court's decision. See MCR 2.613(A); *In re Utrera*, 281 Mich App 1, 14; 761 NW2d 253 (2008).

Finally, the LGAL maintains that the trial court violated ASF's rights to due process and equal protection by refusing to permit the LGAL to present evidence and call witnesses at the § 45 hearing. This cursory argument, made without citation to relevant authority or application of the law to the facts, is insufficiently briefed and we consider it to be abandoned. *Yee v Shiawassee Co Bd of Com'rs*, 251 Mich App 379, 406; 651 NW2d 756 (2002). Further, without addressing these claims in detail, we note that the LGAL had notice of the hearing and she participated in the proceedings on ASF's behalf by presenting evidence and calling a witness to testify. Under these circumstances, we fail to see how ASF's due process rights were violated. See *Cummings v Wayne Co*, 210 Mich App 249, 253; 533 NW2d 13 (1995). Regarding the claimed denial of equal protection, the LGAL fails to even identify a similarly situated group that was treated differently than ASF and thus this claim must also fail. See *Shepherd Montessori Ctr Milan v Ann Arbor Charter Twp*, 486 Mich 311, 318; 783 NW2d 695 (2010).

Affirmed.

/s/ Joel P. Hoekstra
/s/ Kathleen Jansen
/s/ Patrick M. Meter

-11-