WIES v. BRANDT.

1. INSANE PERSONS—EXECUTION OF INSTRUMENTS—GUARDIAN AND WARD—FRAUD—EVIDENCE.

In suit for accounting by trustee and to set aside trust deed under which he acted and which had been executed by plaintiff while under trustee's guardianship as a mentally incompetent person, evidence *held*, to require finding that the execution of the so-called trust deed was procured by fraud of trustee at a time when plaintiff could not have had a full understanding of the purpose and effect of the instrument so as to require vacation thereof.

2. SAME—MENTAL COMPETENCY—PRESUMPTIONS—BURDEN OF PROOF.

While a person is under guardianship as a mentally incompetent person, it is presumed that capacity to make a valid contract is lacking, and where grantor at time of execution of trust deed was under the care, control and domination of trustee who was guardian, it is incumbent upon latter and beneficiaries under the deed to show that grantor was mentally competent and that no undue influence was used then or on day after guardianship was terminated when guardian secured from grantor an affidavit confirming the execution of the instrument.

3. CANCELLATION OF INSTRUMENTS—UNDUE INFLUENCE—FIDUCIARIES —BURDEN OF PROOF.

In suit to set aside trust deed executed while plaintiff was a mentally incompetent person under guardianship of trustee and procured by him by fraudulent means, defendant trustee *held*, not to have sustained burden of showing instrument was obtained without undue influence.

4. INSANE PERSONS—TRUST DEEDS—ACCOUNTING.

Guardian of mentally incompetent maiden lady upwards of 65

Grounds for rescission of a trust, see 2 Restatement, Trusts, § 333.
Fiduciary relations rendering a transaction voidable, see 2 Restatement, Contracts, § 498.
Liability for harm resulting from breach of fiduciary duty, see 4 Restatement, Torts, § 874.
On constructive trusts arising by reason of wrong by the transferee to the transferor, see Restatement, Restitution, § 166.
Acquisition of property by fiduciary through consent by incompetent, see Restatement, Restitution, § 191 (2a); induced by improper conduct of fiduciary, see Restatement, Restitution, § 191 (2b, c, d).
Definition and effect of undue influence, see 2 Restatement, Contracts, § 497.
Effect of breach of trust on the trustee's compensation, see 1 Restatement, Trusts, § 243.

years of age, who fraudulently procured trust deed during guardianship and received fees of $2,500 as special guardian for a month and an average of $12.60 per hour for 492¼ hours during 10-month period of general guardianship, including about $82 for 6½ hours' services procuring repairs, costing less than $17, to ward's home, is required to account to ward for all money and property received without deductions for fees, expenses or charges, excepting such money or property heretofore turned over to plaintiff or others entitled thereto or spent for repairs or improvements on ward's property.

Appeal from Wayne; Taylor (Mark D.), J., presiding. Submitted April 10, 1940. (Docket No. 85, Calendar No. 41,079.) Decided June 3, 1940. Rehearing denied September 6, 1940.

Bill by Pauline E. Wies against August F. Brandt, Fred Schmogrow, Emma Erke, Edith P. Miller, Florence Schmogrow, William Schmogrow, and Elizabeth Schmogrow White to set aside a trust deed and for an accounting. Bill dismissed. Plaintiff appeals. Reversed.

*Henry B. Graves* and *Charles H. Hatch* (*Sanford N. Gordon,* of counsel), for plaintiff.

*Clarence T. Wilson* (*James Montante,* of counsel), for defendant Brandt.

*James S. Sturon* and *J. Henry Denning,* for other defendants.

CHANDLER, J. Plaintiff, Pauline E. Wies, a maiden lady, at the time of the filing of her bill of complaint on May 17, 1939, was approximately 68 years of age. During her adult life, she had followed the vocation of teaching and was so engaged up to and including the year 1937. She had acquired, either by inheritance or through her own endeavors, or by both, considerable property of the value of about $60,000, consisting of stocks, bonds, mortgages and real estate, including the home in which she resided in Highland

Park. To add to her income as a teacher and from her investments, she took roomers who at times were also boarders in her home. The only relatives she had at the time of the institution of this suit were the defendants, other than August Brandt, and who were the children of her uncle, Paul Schmogrow, who died a short time prior to the filing of the bill of complaint. This uncle resided in or near Cincinnati, Ohio, and his children, defendants herein, were not residents of the State of Michigan, being, as far as the record shows, very infrequent visitors of Miss Wies. In fact, it is doubtful if any of them had visited her, or she them, during a period of many years prior to 1937. Up until that year, she had had sole charge and management of her property.

In November or December of 1937, plaintiff suffered a light paralytic stroke from which she made considerable recovery. On February 28, 1938, she experienced a severe stroke which was described by her physician as a cerebral hemorrhage, as a result of which she was physically paralyzed on the right side of her body, resulting in much interference and confusion in mind and speech. The following day, one of plaintiff's roomers, Mr. Keel, notified plaintiff's uncle at Cincinnati that she had suffered a paralytic stroke, and in two weeks three of the defendants, Edith P. Miller, Florence Schmogrow, and Emma Erke, arrived at plaintiff's home. Defendant Florence Schmogrow remained but a short time. Soon defendant Fred Schmogrow arrived. Mrs. Erke stayed until about the middle of May, 1938; Mrs. Miller, the middle of July, and defendant Fred Schmogrow, the middle of January, 1939.

In March, 1938, shortly after the arrival of the above-mentioned defendants, they were informed by Mr. Keel that Miss Wies had made a will, and soon thereafter Mr. Keel was requested by Mrs. Miller and Mrs. Erke to leave plaintiff's house.

On March 19, 1938, defendant Emma Erke petitioned the probate court of Wayne county for the appointment of a special guardian for Miss Wies as a mentally incompetent person, and also for the appointment of a general guardian. On March 22, 1938, defendant Brandt, an attorney, was appointed and qualified as special guardian, and on April 22, 1938, he was appointed and qualified as general guardian, and continued as such until January 19, 1939, when the guardianship was terminated as it was made to appear to the court that plaintiff had recovered her competency.

On January 5, 1939, while plaintiff was still under guardianship as a mentally incompetent, defendant Brandt, still her guardian, secured from her what is called in the record a deed of trust, a document consisting of 12 pages of the printed record, by the terms of which plaintiff turned over to defendant Brandt all of her estate which he was to manage, and which trust should only terminate at the option of the grantor after a period of three years from the date thereof, and then only if said grantor should give said trustee a written notice of her intention to terminate it fully six months prior to the date of such termination. The beneficiaries of the trust in case of the death of plaintiff, providing her uncle Paul G. Schmogrow did not survive her, were the legal heirs of said Paul or the lawful issue of such heirs, each to have a one-seventh part, excepting defendant Florence Schmogrow who was to have a two-sevenths part. The income from the trust estate was to be used by the trustee to pay all charges and expenses necessary and requisite for the proper care and management of the trust estate, and if sufficient income was not available, the payment of such expenses might be made from the principal. Said trust further provided that the trustee should expend for the grantor or her comfort all or such part of such

income in his possession or thereafter accruing as in his absolute and uncontrolled discretion he deemed wise so long as the grantor should live, and thereafter should pay to the uncle of the grantor, if he survived her, such part or parts of the income in his possession, or accruing, as the trustee in his discretion deemed wise so long as said uncle should live. The grantor by the terms of the instrument reserved the right to distribute by last will and testament the sum of $10,000 of her estate. By the terms of said trust, the trustee had full power to dispose of the assets or any part thereof; to invest and reinvest in his discretion without regard to any statutory limitations or restrictions as to the investment of trust funds now in force or which might be enacted in the State of Michigan or any other State in which any of the trust property might be located, and without regard to any legal decisions governing investments by trustees. We think no useful purpose would be served by any further comment upon this instrument. More than a page thereof is devoted to recitals by the grantor that she had been mentally and physically incompetent to manage her estate, but that she had fully regained her mental competency and had so convinced her guardian and the witnesses who subscribed the instrument; that she realized that she might never again fully recover physical ability to manage her estate; that she was in fear that an instrument purporting to be her last will and testament might be used to defeat her desire as to the lawful disposition of her estate; and that she was fully convinced and satisfied that her estate had been competently managed by her guardian and desired his management to continue in such a way as to permit him to use fully his judgment in the investment and conservation of her estate. By the terms of said instrument, she expressly provided that the trustee should not be required to give bond or other security

for the performance of his duties as trustee, and authorized him to retain from her property in his hands compensation for his services and for the care and management of the trust reposed in him. Another page of the instrument is devoted to a statement by the witnesses thereto, showing the thoroughness of the means they had taken to determine for themselves the competency of the grantor at the time of the execution of the instrument. In fact, the instrument itself shows with what meticulous care it had been drafted and executed so as to provide that no loop-hole might remain that would enable plaintiff, or any beneficiaries in any will that she had executed or might thereafter execute, to avoid the inevitable conclusion that she was in full possession of her mental faculties at the time of the execution of such instrument, and that any will theretofore executed by her should be revoked thereby, and the execution of any other valid will prevented, excepting as to the right she reserved to dispose of $10,000 of her estate.

The trustee, evidently not being content with having secured the execution of this instrument while he was acting as plaintiff's guardian, later, on January 20, 1939, one day after plaintiff had been discharged from guardianship, secured from her the execution of another instrument in the form of an affidavit confirming the execution of the deed of trust on January 5, 1939.

Plaintiff, some months after the execution of this so-called trust agreement, ascertained the nature thereof and filed her bill of complaint, making the trustee and her cousins, the named beneficiaries in the agreement, defendants. She charged defendant Brandt with fraud in procuring the execution of the trust deed and prayed that the same might be set aside and that defendant Brandt be required to come to an accounting with her relative to his acts con-

cerning the money, property and effects of which he had taken possession under said alleged deed of trust. Defendants filed answers to the bill and the case went to hearing upon the bill and answers and proofs offered in support of said bill of complaint. The defense offered no testimony. Plaintiff's testimony was taken at her bedside as she was unable to appear in court. The trial judge was evidently not impressed with the testimony given by plaintiff and her witnesses and found that there was no fraud and dismissed the bill of complaint, with costs to defendants. This appeal followed.

We have reviewed the testimony of plaintiff very carefully, in view of the conclusions reached by the trial judge, and are impressed with her testimony that the execution of the so-called trust deed by her was secured at a time when she could not have had a full understanding of the purpose and effect of said instrument. Plaintiff insists, and there is ample supporting proof, that the defendant Fred Schmogrow, after he had remained at her home several months, became an unwelcome visitor. His father at that time was in poor health and the plaintiff insisted that his place was with his father. She testified that during the latter part of the year 1938 she desired that her guardian, Mr. Brandt, require the removal of her cousin Fred from her house, and that Mr. Brandt told her that the only way in which she could secure his removal was by the signing of a paper, which turned out to be the trust deed. She testified that she believed Mr. Brandt when he told her that it was necessary for her to sign the same in order to get Fred out of the house, and that otherwise she would not have signed it. She further testified that at the time she signed said instrument, she did not know what fees and charges Mr. Brandt had collected from her estate as special and general guardian, and that

if she had known of the amount thereof, she would not under any circumstances have made him a trustee in any trust or other agreement. The fact that Brandt did not file his final account as guardian until February 2, 1939, corroborates this testimony.

In view of the conclusions we have reached, we do not find it necessary to go into further detail in connection with the testimony given by plaintiff and her witnesses in support of her contention that the execution of this instrument was procured by fraud on the part of defendant Brandt.

At the time of the execution of the trust deed, plaintiff was under guardianship as a mentally incompetent person. Mr. Brandt, who secured the execution of the instrument, was her guardian. The testimony is convincing that up to this time plaintiff had implicit faith and confidence in her guardian. The presumption is that she could not make a valid contract while under guardianship as a mentally incompetent person. *Acacia Mutual Life Ins. Co.* v. *Jago,* 280 Mich. 360. The grantor was then under the care, control and domination of the defendant who stood in a fiduciary relation to her, and we must find that, in order for defendants to sustain the validity of this agreement, it was incumbent upon them to satisfy the court that at the time of the execution thereof plaintiff was mentally competent and that no undue influence was used by her guardian in connection therewith. This same rule would apply to the day following the termination of the guardianship when the guardian secured from her an affidavit confirming the execution of said instrument. This was at a time when plaintiff was still presumed to be under the influence and domination of Brandt. *Gates* v. *Cornett,* 72 Mich. 420; *Williams* v. *Davison's Estate,* 133 Mich. 344; *Beattie* v. *Bower,* 290 Mich. 517; *Connor* v. *Harris,* 258 Mich. 670.

The conduct of defendant Brandt under the undisputed evidence shows a lack of fairness and good faith in consummating the transaction. In view of the confidential relations between the settlor and the trustee, and the strictly fiduciary character of such relationship, and the unqualified rule imposing upon defendant Brandt the burden of showing that such agreement was obtained without undue influence, which he failed to carry, deeming it inadvisable to take the witness stand and deny the testimony of plaintiff establishing fraud, we are compelled to reverse the decree entered by the trial judge, thus necessitating a decree vacating, setting aside and holding for naught the alleged trust deed.

After a most careful review of all the facts, it is our conclusion that defendant Brandt should account to plaintiff for all money and property of every kind and description taken into his possession as trustee and forthwith deliver the same to plaintiff without any deductions whatsoever for fees, expenses or charges, excepting such money or other property as he may have heretofore turned over to plaintiff or others entitled thereto and such money as he may have necessarily expended in repairs or improvements of plaintiff's property.

We think probably an explanation should be required for this seemingly drastic determination and for that purpose will briefly review our reasons therefor.

It is undisputed that Brandt received for fees as special guardian for a period of about one month the sum of $2,500, and in addition he was allowed a fee for his attorney in the sum of $150. A fee of a guardian *ad litem* appointed at his instance was allowed in the amount of $200. It further appears that the fee of his attorney for the drafting of papers under some reorganization plan, for the preparation

and execution of the trust deed in question, and for other miscellaneous services was allowed in the sum of $300. Also, upon the petition of Brandt as general guardian, he was allowed a fee for extraordinary services in the sum of $2,500, in addition to other fees and expenses in the amount of $717.87. These fees collected by him covered a period of about 10 months, during which time, according to the itemized entries in his diary, he devoted 492¼ hours to services in behalf of his ward, receiving an average of $12.60 per hour for his time. Some of these items are illuminating. On September 13 and 14, 1938, the following entries appear:

"9/13 Conference with Schmogrow re papering room and household affairs—1 hr.

"9/14 Conference with Schmogrow re change of nurse, etc., 1 hr.
Letter to Bellevue re repairs to Castalia property. Picked up paper hanger with tools and him out to ward's home. Talked with ward while he paper room 4½ hrs."

This would total six and one half hours at a cost to his ward for his services of nearly $82. In the account filed by Mr. Brandt with the probate court, there was a charge on September 13, 1938, for repairs on plaintiff's home of $7.66 and for further repairs on September 14th in the amount of $9.16. To summarize, the actual cost of the work in making the repairs was less than $17 and the overhead nearly five times that amount.

During the period of his guardianship, special and general, Mr. Brandt accounts for receipts of $7,587.78 and total disbursements of $10,252.44. Over $6,300 of this amount was for services of the guardian, guardian *ad litem* and the guardian's attorney, and less than $3,900 went for the benefit of plaintiff and her property.

We believe, taking into consideration all of the circumstances and conditions as shown by the record, that defendant Brandt has been amply compensated for any and all services rendered by him as special and general guardian and as trustee under the void agreement. It is not at all surprising that when plaintiff ascertained the facts in reference to the fees charged for and collected by her trusted guardian and adviser that she instituted the instant proceeding.

The decree is reversed and one may be entered in accordance with this opinion, with costs of both courts to plaintiff.

BUSHNELL, C. J., and SHARPE, POTTER, NORTH, McALLISTER and BUTZEL, JJ., concurred.

WIEST, J. (*concurring*). I concur in the result. The trust deed by the ward to her guardian was presumptively void and confirmation thereof immediately following conclusion of the guardianship did not, in this instance, render the trust deed valid. The mentioned presumption, supported by the testimony of the grantor, without any evidence to the contrary, commanded revocation of the trust deed.