*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KIM ANTHONY BURGESS, a legally incapacitated individual, by his conservator and guardian, SCOTT BURGESS,

UNPUBLISHED
March 24, 2020

Plaintiff-Appellant,

v

No. 348068
Bay Circuit Court
LC No. 17-003022-DO

LINDA LOU BURGESS,
also known as LINDA LOU WILLIS,

Defendant-Appellee.

Before: CAMERON, P.J., and SHAPIRO and LETICA, JJ.

PER CURIAM.

Kim Burgess's guardian and conservator, Scott Burgess, filed this action for divorce on Kim's behalf.[1] An amended complaint sought annulment of the marriage. Following a bench trial, the trial court denied the request for an annulment and entered a final judgment of divorce. On appeal, plaintiff argues that the trial court erred in denying annulment because Kim was not capable in law of contracting at the time of the marriage. We agree and reverse.

I.

In 2008, Kim and his then wife, Mary Burgess, entered into a separate maintenance agreement. Kim and defendant Linda Burgess (then Willis) began dating in December 2009 and moved into together in the spring of 2010. Kim was diagnosed with dementia in 2013. According to Linda, in 2014 Kim decided that he wanted to marry her. In May 2014, Kim filed a complaint for divorce from Mary. Eventually the parties in that case reached a settlement agreement, but

---

[1] As used in this opinion, "plaintiff" refers to the legal arguments taken by Kim through his guardian.

there were concerns of the agreement's validity given Kim's dementia diagnosis. As a result, in February 2015, Linda filed a petition for guardianship over Kim.

At the March 10, 2015 petition hearing, Linda was represented by Kim's counsel in the pending divorce action. Counsel explained to the probate court that the guardianship was being sought primarily to protect the integrity of settlement agreement. Counsel also explained that Kim and Linda intended to marry, and therefore requested that the court appoint Linda as a limited guardian only. The probate court engaged with brief colloquies with Kim and Linda regarding the guardianship. One of Kim's children, Marcus Burgess, was present and did not oppose the guardianship or the parties' intent to marry.[2]

The probate court granted the petition, finding clear and convincing evidence that Kim was impaired to the extent of lacking sufficient understanding or capacity to make or communicate informed decisions. The court also granted the request for a limited guardianship, finding that Kim was partially without the capacity to care for himself at that time. Both the order of guardianship and letters of guardianship provided that Linda was to involve Kim in decisions so long as he was "stable." A judgment of divorce was entered in the other case, and Kim and Linda were married on April 23, 2015.

In the spring of 2016, Linda moved out of Kim's home. She testified that Kim's daughter made it intolerable for her to continue living there. Before moving out, Linda filed a petition to be removed as Kim's guardian, citing an inability to manage his affairs given her issues with his children. Scott intervened in those proceedings and requested to be appointed his father's conservator and guardian. After a hearing, the probate court entered orders removing Linda as guardian and appointing Scott and his wife as Kim's co-guardians and Scott as the conservator.

In January 2017, Scott filed a complaint for divorce on Kim's behalf as his guardian and filed an amended complaint requesting annulment of the marriage. The one-day divorce trial was held in December 2018. At that time, Kim was in an assisted living facility and was treated as an unavailable witness. Scott and Linda were the primary witnesses.

The trial court issued an opinion from the bench and found that Kim had sufficient mental capacity to knowingly and voluntarily enter into the marriage. The court noted that plaintiff had not provided any authority indicating that a guardian cannot legally marry the ward, and concluded that Kim decided to marry Linda on his own, i.e., Linda did not make that decision on his behalf as guardian. Accordingly, the court denied the request for annulment and entered a judgment of divorce.

II.

"An action to annul a marriage is equitable in nature," and we review de novo matters of equity. *Rodenhiser v Duenas*, 296 Mich App 268, 271; 818 NW2d 465 (2012). Questions of law are also reviewed de novo. *Hilgendorf v St John Hosp and Med Ctr Corp*, 245 Mich App 670,

---

[2] Kim's oldest child, Scott, did not receive notice of the petition because it was sent to the wrong address. He testified that he would have opposed Linda's appointment as guardian.

695; 630 NW2d 356 (2001). After a bench trial, we review the trial court's factual findings for clear error. *Ligon v Detroit*, 276 Mich App 120, 124; 739 NW2d 900 (2007).

III.

If this case merely concerned the trial court's factual finding as to Kim's mental capacity at the time of the marriage, we would affirm because we see no clear error in that determination. However, the trial court did not address plaintiff's legal argument that a person under a guardianship may not enter into a valid marriage.[3] And we agree with plaintiff that Kim's adjudication as a legally incapacitated individual before the marriage is dispositive of the annulment issue.

Marriage is a civil contract "to which the consent of parties capable in law of contracting is essential." MCL 551.2. "If solemnized within this state, a marriage that is prohibited by law because . . . either party was not capable in law of contracting at the time of solemnization is absolutely void." MCL 552.1. "A person is incapable in law of contracting when that person is mentally incompetent." *Rodenhiser*, 296 Mich App at 272. "The test of mental capacity to contract is whether the person in question possesses sufficient mind to understand in a reasonable manner the nature and effect of the act in which the person is engaged." *In re Erickson Estate*, 202 Mich App 329, 332; 508 NW2d 181 (1993).

In *Rodenhiser*, we affirmed the trial court's finding that the personal representatives of the wife's estate failed to overcome the presumption of the marriage's validity by "clear and definite proof" showing "that [the wife] was of unsound mind to the extent that she had no reasonable perception of the nature and effect of the marriage agreement she consummated with [the husband]." *Rodenhiser*, 296 Mich App at 273 (quotation marks omitted). That is essentially what the trial court found in this case. As stated, were that the only question presented by this appeal, we would affirm. However, in contrast to this case, the wife in *Rodenhiser* had not been adjudicated a legally incapacitated person before the marriage and that makes all the difference.

The Supreme Court has long held that a person adjudged mentally incompetent cannot enter into a valid contract while under a guardianship. See e.g., *Wies v Brandt*, 294 Mich 240, 247; 293 NW 773 (1940) ("The presumption is that [the ward] could not make a valid contract while under guardianship as a mentally incompetent person."); *Gates v Cornnet*, 72 Mich 420, 435; 40 NW 740 (1888) ("The law throws its protecting shield around mentally incompetent persons, from whatever cause, and while in some cases it is permitted them to make contracts *so long as they are not under the restraint of guardianship*, these are binding only so far as they rest upon adequate considerations, and are free from fraud, or overreaching.") (emphasis added). Similarly, it is well established that "[c]ontracts made by mentally incompetent persons prior to adjudication of mental incompetency are not void, but are voidable," *Apfelblat v Nat'l Bank*

---

[3] Although not addressed by the trial court, this issue is preserved because it was raised before the trial court and pursued on appeal. See *Peterman v Dep't of Natural Resources*, 446 Mich 177, 183; 521 NW2d 499 (1994).

*Wyandotte-Taylor*, 158 Mich App 258, 262; 404 NW2d 725 (1987), the implication being that contracts made after such an adjudication are void.

The Supreme Court has not addressed the specific issue of a ward's ability to consent to marriage. But in *May v Leneair*, 99 Mich App 209, 212; 297 NW2d 882 (1980), this Court held that mentally incompetent persons may not enter into a valid marriage. In that case, the wife was adjudicated as mentally incompetent about five years before the marriage. Her guardian brought suit, asserting that the marriage was invalid *ab initio*. *Id*. This Court first held that someone adjudicated as mentally incompetent fell within the statute prohibiting marriage of a person adjudged "insane, feeble-minded or an imbecile" absent a physician's certificate. *Id*. at 213-215. That statute, MCL 551.6, has since been repealed. 2001 PA 9. However, the Court went onto hold that the marriage was void regardless of that statute given the pre-marriage adjudication:

> Furthermore, the same result, that an adjudication of mental incompetency bars a subsequent marriage, obtains independently of the statute.
>
> In *Acacia Mutual Life Ins Co v Jago*, 280 Mich 360, 362, 273 NW 599 (1937), the Supreme Court stated:
>
> "[W]hile an * * * incompetent is under actual and subsisting guardianship of estate, he is *conclusively* presumed incompetent to make a valid contract * * *." (Emphasis supplied.)
>
> Marriage is a civil contract to which the consent of parties capable in law of contracting is essential. Therefore, an adjudicated mental incompetent cannot enter a valid marriage. [*May*, 99 Mich App at 215 (citations omitted).]

We are not required to follow *May* because it was decided before November 1, 1990. See MCR 7.215(J)(1). But opinions decided before that cutoff date are "nevertheless considered to be precedent and entitled to significantly greater deference than are unpublished cases." *Woodring v Phoenix Ins Co*, 325 Mich App 108, 114-115; 923 NW2d 607 (2018) (quotation marks and citation omitted). Further, *May*'s holding that a person adjudicated mentally incompetent cannot enter into a valid marriage flows naturally from the Supreme Court caselaw cited above. And we are required to follow Supreme Court precedent that has not "*clearly* been overruled or superseded." *Associated Builders & Contractors v City of Lansing*, 499 Mich 177, 191; 880 NW2d 765, 772 (2016).

There have been changes to the statutory language regarding the grounds for a guardianship. Namely, until 1979, a guardian could be sought for "insane" persons or those who were "mentally incompetent." See e.g., MCL 703.1, repealed by 1978 PA 642. However, with the enactment of the Revised Probate Code, 1978 PA 642, those terms were replaced by the phrase "legally incapacitated person." See e.g., MCL 700.444, repealed by 1998 PA 386. Currently, the Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq.*, provides that

> [t]he court may appoint a guardian if the court finds by clear and convincing evidence both that the individual for whom a guardian is sought is an incapacitated individual and that the appointment is necessary as a means of providing continuing

-4-

care and supervision of the incapacitated individual, with each finding supported separately on the record. [MCL 700.5306(1).]

An incapacitated individual is defined "as an individual who is impaired by reason of mental illness, mental deficiency, physical illness or disability, chronic use of drugs, chronic intoxication, or other cause, not including minority, to the extent of lacking sufficient understanding or capacity to make or communicate informed decisions." MCL 700.1105(a). And a "[l]egally incapacitated individual" is "an individual, other than a minor, for whom a guardian is appointed under this act or an individual, other than a minor, who has been adjudged by a court to be an incapacitated individual." MCL 700.1105(i).

While we are not aware of any caselaw addressing whether a legally incapacitated individual may enter into a valid contract, it is difficult to discern why the change in verbiage should lead to a different result. If anything, the definition of an incapacitated individual person seems to more directly establish that such a person lacks the mental capacity to contract. That is, a person adjudged to lacked sufficient understanding or capacity to make or communicate informed decisions necessarily does not possess sufficient mental capacity to understand the nature and effect of a contract. See *In re Erickson Estate*, 202 Mich App at 332. We are also not persuaded that Kim's placement under a limited guardianship changes the outcome. Even under a limited guardianship, Kim was a legally incapacitated individual, see MCL 700.1105(i) and MCL 700.1104(n), and therefore still lacked the capacity to contract in law. And though the court ordered a limited guardianship, no specific limitations were provided.

In sum, Supreme Court caselaw is clear that a person adjudged mentally incompetent lacks the ability to contract while under a guardianship. While there have been changes to the relevant statutory language, they do not clearly overrule or supersede that caselaw. And in *May*, 99 Mich App 209, this Court took the logical step of holding that persons adjudged mentally incompetent cannot enter into a valid marriage. For those reasons, we hold that the guardianship order entered before the parties' marriage conclusively establishes that Kim was not capable in law of contracting at the time of solemnization and therefore the marriage is absolutely void.

Given our holding, we need not address plaintiff's alternative arguments relating to whether a guardian can legally enter into a marriage with the ward.[4] We agree with the trial court, however, that plaintiff has not presented any dispositive authority on that matter. Plaintiff cites MCL 700.1214, which provides in pertinent part that "a fiduciary in the fiduciary's personal capacity shall not engage in a transaction with the estate that the fiduciary represents . . . ." But plaintiff does not present any authority indicating that marriage should be considered a "transaction" as that word is used in EPIC. Plaintiff also argues that there should be a presumption

---

[4] Plaintiff also argues that Linda committed fraud when she represented in the affidavit for license to marry that Kim had sufficient mental capacity. However, any allegation of fraud as grounds to annul the marriage is precluded by MCL 552.2 because the parties voluntarily cohabitated after the marriage.

of undue influence given the fiduciary relationship between the parties.[5] Even assuming this presumption applies in the context of a marriage contract, the trial court found that Linda did not act improperly in her capacity as guardian and that Kim entered the marriage on his own accord, i.e., there was no undue influence in this case.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Thomas C. Cameron
/s/ Douglas B. Shapiro
/s/ Anica Letica

---

[5] A presumption of undue influence arises under the following circumstances:

> (1) the existence of a confidential or fiduciary relationship between the grantor and a fiduciary, (2) the fiduciary or an interest which he represents benefits from a transaction, and (3) the fiduciary had an opportunity to influence the grantor's decision in that transaction. [*Kar v Hogan*, 399 Mich 529, 537; 251 NW2d 77 (1976).]