*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

BARBARA WIERSZEWSKI, Personal
Representative of the ESTATE OF RICHARD
MAINE,

UNPUBLISHED
October 13, 2022

Plaintiff-Appellant,

v

No. 360072
Cheboygan Probate Court

NEIL KEY,

LC No. 2021-000023-CZ

Defendant-Appellee.

Before: MARKEY, P.J., and SAWYER and BOONSTRA, JJ.

PER CURIAM.

Plaintiff appeals by leave granted[1] the December 3, 2021 order of the probate court denying her motion for summary disposition, ordering that the April 26, 2019 and June 11, 2019 quitclaim deeds at issue in the case were void, and ordering that the March 10, 2009 quitclaim deed was the controlling deed between the parties. We affirm in part, vacate in part, and remand for further proceedings.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

The facts underlying this case are undisputed. Defendant Neil Key (Key) owned property on Walker Road in Afton Michigan (the property). In 2004, he conveyed the property via quitclaim deed to himself and Amy Maine (Amy) as tenants in common. Key and Amy were in long-term dating relationship, but never married.

In January 2009, the probate court appointed Amy as guardian and conservator of her father, Richard Maine (Richard). In March 2009, Key and Amy conveyed the property via

---

[1] *Estate of Main v Key*, unpublished order of the Court of Appeals, entered June 8, 2022 (Docket No. 360072).

-1-

quitclaim deed to themselves and Richard as joint tenants (the 2009 deed); the language of the deed did not indicate a right of survivorship.

Several years later, Key and Amy ended their relationship and entered into litigation concerning child custody and property division. In 2019, they both signed a settlement agreement regarding the division of their shared property (the settlement agreement). The settlement agreement required Amy to relinquish her interest in the property via quitclaim deed within 30 days. The settlement agreement also contained a statement that "[Key] acknowledges that Richard Maine resides in a mobile home upon the property, and he shall retain a lifetime interest in said property which shall revert to [Key] upon his death." Amy subsequently conveyed her interest in the property to Key and Richard via quitclaim deed (the 2019 settlement deed). This deed made no reference to joint tenancy, but only stated that Amy conveyed her interest in the property to Key and Richard in "full satisfaction of the parties' Property Settlement Agreement."

In June 2019, Richard signed a quitclaim deed conveying his interest in the property to Key and reserving a life estate in the property until his death (the 2019 life estate deed). This deed made no reference to Richard's status as a person under guardianship and conservatorship; nor did Amy (his guardian and conservator) sign the deed. Amy also did not petition the probate court for approval of the conveyance of Richard's interest.

Richard died in 2021. At the time of his death, Amy was still Richard's guardian and conservator. Plaintiff—the personal representative of Richard's estate--subsequently filed suit against Key, alleging that Amy had severed the joint tenancy when she conveyed her interest to Richard and Key in 2019, that Richard and Key were thereafter tenants in common in the property, and that the 2019 life estate deed was invalid because it had not been signed by Amy or approved by the probate court. Therefore, plaintiff argued, at the time of Richard's death, he possessed a one-half interest in the property. Plaintiff asked the court to award that interest to the estate and to order the sale of the property to satisfy that interest.

Plaintiff moved for summary disposition under MCR 2.116(C)(9) and (10), primarily arguing that the 2019 life estate deed was invalid.[2] After a hearing on plaintiff's motion, the probate court held that the 2019 life estate deed was void because, as a protected person, Richard could not dispose of property he owned without court approval. After the probate court held the 2019 life estate deed void, Key argued that he and Richard had been joint tenants, not tenants in common, in the property and that Richard's interest had therefore reverted to Key upon Richard's death. Plaintiff argued in response that the joint tenancy had been destroyed by the 2019 settlement deed. The probate court asked the parties to brief the questions of what interests Key and Richard held in the property after the 2019 settlement deed.

After receiving the parties' supplemental briefs and holding an additional motion hearing, the probate court held that the 2019 settlement deed was void, because it had effectively changed

---

[2] In a footnote to her brief in support of her motion, plaintiff did argue that the joint tenancy had been severed by Amy's conveyance in 2019, and additionally that "Defendant Key's act of having [Richard] sign an improper deed while under conservatorship and guardianship of this Court also severed any joint tenancy."

Richard's interest in the property without court approval. The probate court therefore held that the 2009 deed was the controlling deed in this matter, and denied plaintiff's motion for summary disposition. The probate court denied plaintiff's motion for reconsideration.

This appeal followed.

## II. STANDARD OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition. *Ellison v Dep't of State*, 320 Mich App 169, 175; 906 NW2d 221 (2017). We also review de novo the proper interpretation of deed language, *In re Rudell Estate*, 286 Mich App 391, 402-403; 780 NW2d 884 (2009), and statutory language, *Makowski v Governor*, 317 Mich App 434, 441; 894 NW2d 753 (2016).

## II. VALIDITY OF THE 2019 SETTLEMENT DEED

Plaintiff argues that the probate court erred by sua sponte declaring the 2019 settlement deed invalid,[3] noting that Richard was not a signatory to that deed, which conveyed Amy's interest in the property to the remaining tenants. We agree.

This Court's primary goal in interpreting statutory language is to give effect to the intent of the Legislature. *Mich Ed Ass'n v Secretary of State* (*On Rehearing*), 489 Mich 194, 217; 801 NW2d 35 (2011). The intent of the Legislature is derived from the language of the statute itself, and the Legislature is presumed to have intended the meaning it plainly expressed. *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012). Therefore, clear statutory language must be enforced as written. *Velez v Tuma*, 492 Mich 1, 16-17; 821 NW2d 432 (2012).

MCL 700.5423 governs the powers of a conservator in managing the real property of an individual under disability, and provides in relevant part:

> A conservator shall not sell or otherwise dispose of the protected individual's principal dwelling, real property, or interest in real property or mortgage, pledge, or cause a lien to be placed on any such property without approval of the court. The court shall only approve the sale, disposal, mortgage, or pledge of or lien against the principal dwelling, real property, or interest in real property if, after a hearing with notice to interested persons as specified in the Michigan court rules, the court considers evidence of the value of the property and

---

[3] The parties do not argue that the probate court erred by declaring the 2019 life estate deed to be invalid. As a person under guardianship at the time he signed the deed, Richard was presumably unable to enter into a valid contract on his own. See *Wies v Brandt*, 294 Mich 240, 247; 293 NW2d 773 (1940). Because his guardian/conservator does not appear to have been involved in the execution of the 2019 life estate deed, and the probate court did not approve the conveyance, the probate court did not err by concluding that the 2019 life estate deed was invalid.

-3-

otherwise determines that the sale, disposal, mortgage, pledge, or lien is in the protected individual's best interest.  [MCL 700.5423(3).]

The probate court noted that, if the 2019 settlement deed had indeed destroyed the joint tenancy between Key and Richard, then Richard would have lost his right of survivorship, denying him any potential of owning the entire interest in the property.  As we will discuss in the next section of this opinion, the probate court was incorrect in assuming that a valid 2019 settlement deed destroyed *all* joint tenancy between Richard and Key.  But, more importantly, even if Richard's interest in the property was indirectly altered by the 2019 settlement deed, the language of MCL 700.5423(3) makes it clear that a conservator is only restricted from taking certain actions regarding *the protected individual's* real property interest without court approval.  Nothing in MCL 700.5423(3) prevents a conservator from disposing of *her own* real property interests without court approval.  *Makowski v Governor*, 317 Mich App at 441.  The probate court and the parties have cited no authority to the contrary, and this Court has found none.  We therefore conclude that the probate court erred by holding that the 2019 settlement deed was invalid because Amy had failed to seek court approval before conveying her interest in the property to Richard and Key.

### III.  JOINT TENANCY

Plaintiff also argues that the joint tenancy was completely severed either (1) when Amy conveyed her interest in the property to Richard and Key or (2) when Key had Richard sign the 2019 life estate deed.  We disagree that the actions taken by Key that resulted in an invalid 2019 life estate deed severed the joint tenancy between Key and Richard.  We also disagree that Amy's execution of the 2019 settlement deed *completely* severed the joint tenancy between all three tenants; instead, we conclude that the 2019 settlement deed only severed the joint tenancy between Key and Richard with regard to Amy's interest in the property.

"All grants and devises of lands, made to 2 or more persons, except as provided in [MCL 554.45], shall be construed to create estates in common, and not in joint tenancy, unless expressly declared to be in joint tenancy."  MCL 554.44.  The principal characteristic of joint tenancy is the right of survivorship.  *Albro v Allen*, 434 Mich 271, 274-275; 454 NW2d 85 (1990).  Upon the death of one joint tenant, the surviving tenant or tenants take the whole estate.  *Id.* at 275.  Michigan recognizes two forms of joint tenancy.  *Id.* at 274.  In the first form, which is the typical joint tenancy, the right of survivorship may be destroyed by severance of the joint tenancy.  *Id.* at 275.  "The joint tenancy may be severed by an act of the parties, by conveyance by either party, or by levy and sale on an execution against one of the parties."  *Id.*  If a joint tenant conveys his or her interest to a third party, then the third party and the remaining joint tenant become tenants in common.  *Id.*  If there are more than two joint tenants and one of the joint tenants conveys his or her interest to a third party, then the third party becomes a tenant in common with the other joint tenants, who remain joints tenants.  *Wayne Woods Land Co v Beeman*, 211 Mich 360, 362-363; 178 NW 696 (1920); 1 Cameron, Michigan Real Property Law (3d ed), § 9.10, p 321.  The typical joint tenancy is characterized by four unities: unity of interest, unity of title, unity of time, and unity of possession.  *Albro*, 434 Mich at 274.  The second form of joint tenancy is created by express words of survivorship, such as "with full rights of survivorship," in the granting document.  *Id.* at 275.  This form of joint tenancy is comprised of a joint life estate with dual contingent remainders.  *Id.*  An act of one joint tenant cannot destroy the other joint tenant's contingent remainder.  *Id.* at 276.

In this case, the parties do not dispute that the 2009 deed created a typical joint tenancy between Key, Amy, and Richard. When Amy, a joint tenant, executed the 2019 settlement deed, she conveyed her interest to Key and Richard, the other two joint tenants. "Where one of three or more joint tenants conveys an interest to one of the others, the conveyee becomes a tenant in common as to the interest conveyed, but remains a joint tenant as to his or her interest." 20 Am Jur 2d, Cotenancy and Joint Ownership, § 23; see also 2 Tiffany Real Property (3rd ed), § 425; see also *Wayne Woods Land Co*, 211 Mich at 362-363; *Jackson v O'Connell*, 23 Ill 2d 52, 56-57; 177 NE2d 194 (1961).[4] Therefore, when Amy conveyed her interest to Richard and Key, they became tenants in common with respect to that interest, but with respect to their own interests they remained joint tenants. *Id.* Contrary to plaintiff's argument, the 2019 settlement deed (or Amy's act of executing that deed) did not completely sever the joint tenancy between all tenants; rather, it only severed the joint tenancy as to the one-third interest in the property that was formerly Amy's. See *Wayne Woods Land Co*, 211 Mich at 362-363. Key and Richard remained joint tenants as to the remaining two-thirds interest in the property. *Id.* And, contrary to Key's argument, this interest could not simply be joined to the two-thirds interest in the property that Key and Richard held as joint tenants, because they took ownership of the remaining one-third interest at a different time under a different title. See *Albro*, 434 Mich at 274; *Jackson*, 23 Ill 2d at 57. We therefore conclude that the effect of the 2019 settlement deed was to convey a one-third interest in the property to Key and Richard as tenants in common, while the remaining two-thirds interest was held by them as joint tenants.

We are not persuaded by plaintiff's argument that any remaining joint tenancy was destroyed by Key's acts causing the 2019 life estate deed to be created and having Richard sign it. The 2019 life estate deed is void. Plaintiff has not provided this Court with any authority indicating that a void deed nonetheless may sever a joint tenancy. A void instrument generally has no legal force or binding effect. See *Epps v 4 Quarters Restoration, LLC*, 498 Mich 518, 537; 872 NW2d 412 (2015). In the absence of any authority to the contrary, we decline to find that Key's actions related to the 2019 life estate deed severed the joint tenancy between Key and Richard.

---

[4] Caselaw from other jurisdictions is not binding on this Court, but may be considered for its persuasive value. *In re* Schultz, 334 Mich App 730, 740 n 3; 965 NW2d 741 (2020) (citation omitted). In *Jackson*, three sisters were joint tenants in various parcels of property. One sister, Nellie, conveyed her interest in the parcels, to another sister, Anna. *Id.* at 54. The Illinois Supreme Court acknowledged the rule that when there are three joint tenants and one joint tenant conveys his interest to a third party, the joint tenancy is only severed as to the interest conveyed; "the third party grantee became a tenant in common with the other two joint tenants, but the latter still held the remaining two thirds as joint tenants with right of survivorship therein." *Id.* at 56. The Illinois Supreme Court held that, following Nellie's conveyance of her one-third interest in the parcels to Anna, Anna and the third sister, Katherine, remained joint tenants as to the remaining two-thirds interest in the parcels. *Id.* at 54-55, 58. Upon Anna's death, Katherine, as the surviving joint tenant, succeeded as to that two-thirds interest. *Id.* The four devisees of Anna's will, as devisees of Anna's one-third interest held by her as a tenant in common, were each entitled to a one-twelfth interest in the parcels. *Id.*

The probate court erred by holding that the 2019 settlement deed void, and by determining that the 2009 deed controlled in this matter. Under the 2019 settlement deed, at the time of Richard's death, Key and Richard were joint tenants as to a two-thirds interest in the property and were tenants in common of the remaining one-third interest. We therefore vacate the probate court's order to the extent that it held the 2019 settlement deed void and the 2009 deed controlling, and otherwise affirm the probate court's order and remand the case for further proceedings consistent with this opinion and this conclusion. In light of our determination that the probate court made errors of law, we need not address Key's "unclean hands" argument, which in any event Key has failed to support with reference to legal authority apart from the bare recitation of the doctrine. *Prince v MacDonald*, 237 Mich App 186, 197; 602 NW2d 834 (1999), lv den 461 Mich 996 (2000).

Affirmed in part, vacated in part, and remanded for further proceedings consistent with this opinion. Neither party having prevailed in full, no costs may be taxed. MCR 7.219(A). We do not retain jurisdiction.

/s/ Jane E. Markey
/s/ David H. Sawyer
/s/ Mark T. Boonstra